IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

In the Matter of:                                       Case No. 03-07434-lmj7

TIMOTHY PAUL MATTINGLY,                PRE BAPCPA CASE
KIMBERLY ANN MATTINGLY,                  [UNPUBLISHED]

                Debtors

**MEMORANDUM OF DECISION**
**(date entered on docket: June 22, 2007)**

The United States Trustee for Region 12 ("U.S. Trustee") filed an 11 U.S.C. section 707(b) (2000) motion to dismiss this Chapter 7 case. The U.S. Trustee contends Debtors Timothy Paul Mattingly and Kimberly Ann Mattingly ("Debtors") have the ability to pay a significant percentage of their consumer debt and, therefore, permitting them to proceed with this liquidation case would be a substantial abuse of the provisions governing Chapter 7. The Debtors disagree. Having reviewed the record and having considered the arguments of the parties, the Court enters its decision in favor of the U.S. Trustee.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1334 and the standing order of reference entered by the U.S. District Court for the Southern District of Iowa. This is a core matter under 28 U.S.C. section 157(b)(2)(A) and (O).

BACKGROUND

The parties do not dispute that Debtors owe $88,000.00 in secured debt and $89,871.53 in unsecured nonpriority debt.[1] The parties do not dispute these debts are primarily consumer debts.

---

[1] On Schedule E (Creditors Holding Unsecured Priority Claims), Debtors report they owe no unsecured priority debt.

On Schedule I (Current Income of Individual Debtors), Debtors report they have three dependents and their combined net monthly income is $4,216.79.  The U.S. Trustee contends that figure should be $4,419.00 based on wage statements and W-2 forms Debtors provided and also because Debtors understated Mr. Mattingly's net monthly income by deducting a $98.41 voluntary contribution to a retirement plan.

On Schedule J (Current Expenditures of Individual Debtors), Debtors indicate their monthly expenses total $4,673.00.  The U.S. Trustee contends that figure should be $3,034.00 based on his proposed reductions in the amounts shown for cellular phones, internet, cable, garbage, home maintenance, medical, transportation, recreation, and auto insurance, his proposed elimination of school lunches and college expenses, and his proposed increase in the amount shown for food.

Based on the figures appearing on Schedules I and J, Debtors believe they have no disposable income to fund a Chapter 13 plan.  Based on his adjustments to Debtors' income and expenses, the U.S. Trustee argues Debtors have $1,385.00 disposable monthly income and that amounts to $49,860.00 over three years and $83,100.00 over five years or payment of 55.48% of Debtors' unsecured debt in three years and 92.46% in five years.

At the evidentiary hearing, The U.S. Trustee offered and the Court received Exhibits A (Calculation of Income) and B (Monthly Expenses, Disposable Monthly Income, and Repayment Capacity) that were attached to the motion to dismiss.  The Debtors offered Exhibits A through I.  The Court received Exhibits A and G.[2]  The U.S.

---

[2] Exhibits B, C, D, E, F, H, and I were summaries of certain monthly expenses that lacked sufficient supporting documentation.

Trustee called one witness: L. Todd Vandenberg, who is the U.S. Trustee's Bankruptcy Analyst for the Southern District of Iowa. The Debtors testified in their case-in-chief.

## APPLICABLE LAW

11 U.S.C. section 707(b) (2000) provides in relevant part:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. section 707(b) (2000). The Eighth Circuit substantial abuse inquiry focuses primarily on an individual debtor's ability to pay his or her debts. See In re Koch, 109 F.3d 1285, 1288 (8th Cir. 1997); U.S. Trustee v. Harris, 960 F.2d 74, 77 (8th Cir. 1992); Fonder v. United States, 974 F.2d 996, 999 (8th Cir. 1992); In re Walton, 866 F.2d 981, 984-85 (8th Cir. 1989). The ability to pay is typically measured by assessing how much disposable income a debtor would be able to pay his or her unsecured creditors under a three to five year Chapter 13 plan. See Koch, 109 F.3d at 1288. 11 U.S.C. section 1325(b)(2) (2000) defines "disposable income" as follows:

> "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
>
> (A) for the maintenance or support of the debtor or a dependent of the debtor . . . and
>
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b)(2) (2000). The controlling circuit case law does not require a trial court to find a debtor can pay a specific threshold of unsecured debt over three to five years before that court may conclude the Chapter 7 filing amounts to substantial abuse.

Case 03-07434-lmj13 Doc 24 Filed 06/22/07 Entered 06/22/07 18:45:14 Desc Main Document Page 4 of 10

Rather, "the essential inquiry remains whether the debtor's ability to repay creditors with future income is sufficient to make the Chapter 7 liquidating bankruptcy a substantial abuse of the Code." Fonder, 974 F.2d at 999.

Finally, neither section 707(b) (2000) nor its legislative history suggest Federal Rule of Evidence 301 would not apply in this case.[3] Accordingly, a U.S. Trustee has the burden of rebutting or meeting the section's presumption in favor of a debtor. Nevertheless, a debtor must file a schedule of current income and current expenditures in support of the Chapter 7 petition. 11 U.S.C. § 521(1) (2000). Those schedules must be accurate. Fed. R. Bankr. P. 1008.[4]

## DISCUSSION

Resolution of the pending controversy first requires the Court to determine how much disposable income Debtors would likely have over three to five years. Then the Court must decide whether allowing Debtors to retain that amount in lieu of paying their unsecured debts is a substantial abuse of the Chapter 7 provisions.

I. The Disposable Income Calculation

---

[3] Federal Rule of Evidence 301, made applicable to bankruptcy cases and proceedings by Federal Rule of Bankruptcy Procedure 9017, provides:

> In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

Fed. R. Evid. 301.

[4] Federal Rule of Bankruptcy Procedure 1008 provides that "[a]ll petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746."

The parties dispute whether Debtors' net monthly income should include the voluntary contribution to a retirement fund and whether certain of Debtors' expenses are accurate and reasonable.

### Monthly Income

Debtors' net monthly income should include Timothy Mattingly's $98.41 voluntary contribution to a retirement plan. Absent compelling reasons, amounts contributed to a retirement plan are not reasonably necessary expenditures and therefore are properly included in disposable income. In re Behlke, 358 F.3d 429, 435-36 (6th Cir. 2004); In re Wolfe, No. 02-05117-rjh7, slip op. at 7-9 (Bankr. S.D. Iowa May 28, 2004). Debtors presented no compelling reasons for this Court to deviate from the way it has ruled on this issue over the years.[5] Accordingly, the Court finds Debtors' combined net monthly income to be the $4,419.00 figure reflected on U.S. Trustee Exhibit A.

### Monthly Expenses[6]

*Other Utilities—Cellular Phone, Internet, Cable, and Garbage.* The U.S. Trustee recommends $75.00. On Schedule J, Debtors indicate they spend $128.00 for cell phone and internet service, $10.00 for garbage and $33.00 for cable or a total of $171.00 for other utilities.

Debtors' Exhibit A contains an Iowa Telecom account statement indicating a current monthly charge of $59.57 and a Verizon wireless account summary indicating a current monthly charge of $158.29. According to Kimberly Mattingly's testimony, the

---

[5] For cases filed on and after October 17, 2005, see 11 U.S.C. section 541(b)(7) (2006) (contributions) and see generally 11 U.S.C. section 1322(f) (2006) (loan repayments).

[6] During the evidentiary hearing, the parties expended time questioning and defending expenses related to clothing and to nonfood items. Since Debtors did not amend Schedule J to increase the unchallenged amounts related to those two categories and thereby prevented the U.S. Trustee from timely amending his motion accordingly, the Court finds that any contest with respect to those amounts was not preserved for hearing. See Fed. R. Bankr. P. 1017(e)(1).

former covered both a dial up modem and the local and long distance plan for the hard line at Debtors' residence and the latter covered one cell phone Debtors share and two cell phones their daughters use.  She thought the cell phone plan payment was between $59.99 and $69.00 for the first phone and $20.00 for each additional phone.  She readily acknowledged the current charge was higher than it should be because they had exceeded their plan minutes.  She projected Debtors' total monthly telephone expenses would be $128.00.

Given that Schedule I contains a separate unchallenged line item for telephone expense at $56.00 and given Debtors did not provide any documentation for cable and garbage charges, the Court considers $75.00 to be a reasonably necessary amount to be expended for the category of other utilities.

*Home Maintenance.*  The U.S. Trustee recommends $100.00.  On Schedule J, Debtors indicate they spend $300.00.  According to Kimberly Mattingly's testimony, Debtors live in a 100-year old home that requires a lot of maintenance.  Taking into account routine monthly expenses related to housekeeping supplies and yearly expenditures related to major repairs, she estimated they really needed $368.00 a month for maintenance.  With regard to major repairs, she based her projection on $1,700.00 already expended for an upstairs bathroom project and on Home Depot estimates for materials for repairing a ceiling, refinishing wood flooring, replacing a window, painting the exterior of the house, replacing bad siding and repairing a basement wall.  Her projection did not include any estimate for labor because her husband and father do all the work.

Given that the estimate for major repairs included $141.67 ($1700.00 ÷ 12) for a completed project and given that the Court is not convinced Debtors have no choice but to act on all the projected repairs within a year's time or will have similar maintenance issues every year, even the scheduled amount seems unreasonably high. Nevertheless, some upward adjustment from the standard amount recommended by the U.S. Trustee is justified given the age of their residence. Accordingly, the Court considers $150.00 to be a reasonably necessary amount to be expended for the category of maintenance.

*Food.* The U.S. Trustee recommends $800.00 for a family of four. On Schedule J, Debtors indicate they spend $600.00. Consistent with the undersigned judge's prior bench rulings applicable in this case, the Court considers $800.00 to be a reasonably necessary amount to be expended for this expense category.

*Medical.* The U.S. Trustee recommends $100.00. On Schedule J, Debtors indicate they spend $600.00. Kimberly Mattingly testified her projections were based on past experiences and on some documentation she had located to support actual expenses. Her testimony, however, was far from clear regarding what amount Debtors pay monthly on average and what amount their insurance pays.

Though the Court does not question that Debtors may have some costs related to their daughters upper respiratory problems, Kimberly Mattingly's positional vertigo and Timothy Mattingly's dental problems, the Court finds that the record does not support their projected out-of-pocket expenses. Therefore the Court accepts the U.S. Trustee's figure of $100.00 as an amount reasonably necessary to be expended on actual medical costs.

*Transportation.* The U.S. Trustee recommends $150.00. On Schedule J, Debtors indicate they spend $320.00. Kimberly Mattingly testified that she drives 20 miles roundtrip to work and her husband drives approximately 24 miles roundtrip to his job location. Sometimes they drive together but due to their different hours of employment that is the exception rather than the rule. They use her vehicle for school events and trips to the doctor in Omaha. They also cover all the operating costs for the vehicle one of their daughters drives even though that daughter does have income from summer employment. She believed the projected costs were based on 35 cents per mile.

Though Kimberly Mattingly's testimony referenced very little in the way of documentation to support the amount Debtors requested for transportation expenses in general and nothing with regard to fuel in particular, Schedule B (Personal Property) indicates they own older model vehicles and it is common knowledge that gasoline prices have remained relatively high for a number of years. Accordingly, the Court considers $300.00 to be a reasonably necessary amount to be expended for the category of transportation.

*Recreation.* The U.S. Trustee recommends $50.00. On Schedule J, Debtors indicate they spend $120.00. Consistent with the undersigned judge's prior bench rulings applicable in this case, the Court considers $50.00 to be a reasonably necessary amount to be expended for this expense category.

*Auto Insurance.* The U.S. Trustee recommends $77.00. On Schedule I, Debtors indicate they spend $180.00. Kimberly Mattingly testified that Debtors had in fact reduced their auto insurance to $77.00. The Court will allow $77.00.

*School Lunches.* The U.S. Trustee recommends $0.00. On Schedule J, Debtors indicate they spend $100.00. The U.S. Trustee's increase in the food allowance covers this expense. The Court will not allow a separate amount for school lunches.

*College Expenses.* The U.S. Trustee recommends $0.00. On Schedule J, Debtors indicate they spend $600.00. Kimberly Mattingly testified Debtors believed they were obligated to assist their eldest daughter with her college expenses because they claim her as a dependent on their tax forms. In addition to helping pay for schooling, they were assisting with sorority living expenses.

Though Debtors' desire to help their daughter further her education is understandable, they may not do so at the expense of their creditors. See United States Trustee v. Staub (In re Staub), 256 B.R. 567 (Bankr. D. Pa. 2000); In re Stallman, 198 B.R. 491 (Bankr. W.D. Mich. 1996); In re McNulty, 142 B.R. 106 (Bankr. D.N.J. 1992); In re Goodson, 130 B.R. 897 (Bankr. N.D. Okla. 1991). Consistent with the foregoing case law and with the undersigned judge's prior bench rulings applicable in this case, the Court will not allow an amount for college expenses.[7]

## Monthly Balance

The sum of the allowed monthly expenses is $3,234.00. Subtracting that amount from the monthly income figure of $4,419.00 yields monthly disposable income of $1,185.00.

II. The Substantial Abuse Analysis

Based on the above calculations, Debtors will likely have between $42,660.00 and $71,100.00 disposable income over three to five years.[8] Since the projected

---

[7] For cases filed on and after October 17, 2005, see 11 U.S.C. section 707(b)(2)(A)(ii)(IV) (2006).

expenses on Schedule J include payments on scheduled secured debt, the disposable income Debtors would generate over three to five years would be available to satisfy between approximately 47.46% and 79.12% of their scheduled unsecured debt.[9] Such amounts are not insignificant.

## CONCLUSION

WHEREFORE, the Court finds that the U.S. Trustee has overcome the statutory presumption in favor of granting Chapter 7 relief and, therefore, the motion to dismiss must be granted.

A separate Order shall be entered accordingly.

/s/ Lee M. Jackwig
Lee M. Jackwig
U.S. Bankruptcy Judge

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Chapter 7 case

---

[8] $1,185 x 36 = $42,660.00 and $1,185 x 60 = $71,110.00.

[9] [$42,660.00 x 100] ÷ $89,872.00 = 47.46% and [$71,110.00 x 100] ÷ $89,872.00 = 79.12%. Parenthetically, the Court points out these calculations do not take into account either the trustee's commission and the attorney's fee in a Chapter 13 context or the accrual of interest under a repayment plan outside of bankruptcy.